FILED

2013 MAR -8 PM 3:59

CLERK US DISTRICT COURT WESTERN DISTRICT OF TEXAS BY ______ DEPUTY

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** <br> **Petitioner,** | § <br> § <br> § | |
| **v.** | § <br> § | **Civil Action No. ______** <br> **A13CV0194 SS** |
| **REAL PROPETY LOCATED AND SITUATED AT 404 W. MILTON STREET, AUSTIN, TRAVIS COUNTY, TEXAS** | § <br> § <br> § <br> § | |
| **REAL PROPETY LOCATED AND SITUATED AT 406 W. MILTON STREET, AUSTIN, TRAVIS COUNTY, TEXAS** | § <br> § <br> § <br> § | |
| **REAL PROPETY LOCATED AND SITUATED AT 1615 S. 1ST STREET, AUSTIN, TRAVIS COUNTY, TEXAS** | § <br> § <br> § <br> § | |
| **REAL PROPETY LOCATED AND SITUATED AT 1619 S. 1ST STREET, AUSTIN, TRAVIS COUNTY, TEXAS** <br> **Respondents.** | § <br> § <br> § <br> § | |

**VERIFIED COMPLAINT FOR FORFEITURE**

NOW COMES Petitioner United States of America ("the United States"), by and through the U.S. Attorney for the Western District of Texas, pursuant to Supplemental Rule G of the Federal Rules of Civil Procedure, and respectfully states as follows:

## I. NATURE OF THE ACTION

1. Through this civil action, the United States seeks forfeiture to the United States of the properties described below:

A. Real property located and situated at **404 W. Milton Street, Austin, Travis County, Texas,** including any and all buildings, appurtenances and improvements thereon and any and all surface rights, title and interests, if any, and more fully described as: LOT 1, BLOCK "A", GUS F. BECKER'S SUBDIVISION, AN ADDITION IN TRAVIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF

RECORDED IN BOOK 3, PAGE 115, PLAT RECORDS, TRAVIS COUNTY, TEXAS. RESERVATIONS FROM AND EXCEPTIONS TO CONVEYANCE AND WARRANTY FOR ALL OF THE AFOREMENTIONED REAL PROPERTY: Easements, rights-of-way, and prescriptive rights, whether of record or not; all presently recorded instruments, other than liens and conveyances, that affect the property.

B. Real property located and situated at **406 W. Milton Street, Austin, Travis County, Texas,** including any and all buildings, appurtenances and improvements thereon and any and all surface rights, title and interests, if any, and more fully described as: LOT 2 OF THE MAYITO SUBDIVISION IN TRAVIS COUNTY, TEXAS, ACCORDING TO THE PLAT RECORDED AS DOCUMENT NO. 200700150 OF THE OFFICIAL RECORDS OF TRAVIS COUNTY, TEXAS. RESERVATIONS FROM AND EXCEPTIONS TO CONVEYANCE AND WARRANTY FOR ALL OF THE AFOREMENTIONED REAL PROPERTY: Easements, rights-of-way, and prescriptive rights, whether of record or not; all presently recorded instruments, other than liens and conveyances, that affect the property.

C. Real property located and situated at **1615 S. 1st Street, Austin, Travis County, Texas,** including any and all buildings, appurtenances and improvements thereon and any and all surface rights, title and interests, if any, and more fully described as: LOT 7, BLOCK 3, D.W. BOULDIN'S ADDITION TO THE CITY OF AUSTIN, A SUBDIVISION IN THE CITY OF AUSTIN, TRAVIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT OF RECORD IN VOLUME 1, PAGE 78, PLAT RECORDS, TRAVIS COUNTY, TEXAS. RESERVATIONS FROM AND EXCEPTIONS TO CONVEYANCE AND WARRANTY FOR ALL OF THE AFOREMENTIONED REAL PROPERTY: Easements, rights-of-way, and prescriptive rights, whether of record or not; all presently recorded instruments, other than liens and conveyances, that affect the property.

D. Real property located and situated at **1619 S. 1st Street, Austin, Travis County, Texas,** including any and all buildings, appurtenances and improvements thereon and any and all surface rights, title and interests, if any, and more fully described as: LOTS 8 AND 9, BLOCK 3, D.W. BOULDIN'S ADDITION TO THE CITY OF AUSTIN, TRAVIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT RECORDED IN VOLUME 1, PAGE 78, PLAT RECORDS, TRAVIS COUNTY, TEXAS. RESERVATIONS FROM AND EXCEPTIONS TO CONVEYANCE AND WARRANTY FOR ALL OF THE AFOREMENTIONED REAL PROPERTY: Easements, rights-of-way,

and prescriptive rights, whether of record or not; all presently recorded instruments, other than liens and conveyances, that affect the property.

**(hereinafter the "Respondent Real Properties")**.

## II. STATUTORY BASIS FOR FORFEITURE

2. This is a civil forfeiture action *in rem* brought against the Respondent Real Properties for violations of 21 U.S.C. §§ 801 *et seq*. and subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(7), which states:

**21 U.S.C. § 881. Forfeiture**

**(a) Subject property**
The following shall be subject to forfeiture to the United States and no property right shall exist in them:

**(7)** All real property, including any right, title, and interest (including any leasehold interest) in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this subchapter punishable by more than one year's imprisonment.

## III. JURISDICTION AND VENUE

3. This Court has jurisdiction over an action commenced by the United States pursuant to 28 U.S.C. § 1345 and over an action for forfeiture pursuant to 28 U.S.C. § 1355(a). Pursuant to 28 U.S.C. § 1355(b) and § 1395, this Court has *in rem* jurisdiction over the Respondent Real Properties which are located at 404 West Milton Street, Austin, Travis County, Texas; 406 W. Milton Street, Austin, Travis County, Texas; 1615 S. 1st Street, Austin, Travis County, Texas; and 1619 S. 1st Street, Austin, Travis County, Texas, with all buildings, appurtenances, and improvements thereon and any and all surface and sub-surface rights, title and interests.

4. Venue is proper in this district, pursuant to 28 U.S.C. § 1355(b)(1), because the acts or omissions giving rise to the forfeiture occurred in this District and because the Respondent Real Properties are found in this District. *See also* 28 U.S.C. § 1395(b).

## IV. FACTS IN SUPPORT OF FORFEITURE

5. Beginning in May 2011, law enforcement officials with the Federal Bureau of Investigations (FBI) along with other federal, state, and local agencies began a joint investigation of a heroin drug trafficking organization involving Amado Pardo and others ("the Pardo DTO").

6. Amado Pardo was the *de facto* owner and operator of Jovita's Restaurant and Cantina ("Jovita's") located at 1615 S. 1st Street and 1619 S. 1st Street, Austin, Travis County, Texas. Amado Pardo was previously convicted of murder twice and is a documented member of the Texas Syndicate prison gang. Members of the Pardo DTO included Texas Syndicate prison gang members and other co-conspirators who had strong ties to Amado Pardo, including his wife and brother. The investigation included the use of court-authorized wire intercepts. The wire intercepts confirmed that Amado Pardo coordinated the sale of heroin for the Pardo DTO on a daily basis.

### A. The Criminal Investigation.

7. The investigation of the Pardo DTO revealed that Amado Pardo and his brother (Jose Pardo) were supplied with heroin by Jorge Carrillo and Jose Rodriguez. Amado Pardo used other members of the Pardo DTO to process the heroin. Once processed, distributors for the Pardo DTO would sell the heroin. Amado Pardo would then collect the drug proceeds (*i.e* the money from the sale of the heroin).

8. During the investigation, investigators determined that the Pardo DTO suppliers delivered the heroin to Amado Pardo at 404 W. Milton Street. After receiving the heroin,

Amado Pardo's wife (Amanda Pardo) along with Pardo DTO member Tatiana Huang ("Huang") would process the heroin and place it into individual balloons. Eighteen of the heroin-filled balloons were packaged for distribution to street customers; the eighteen balloons would sell for $200 to $240.

9. During the investigation, surveillance officers observed one of the members of the Pardo DTO, Michael Martinez ("Martinez"), leave his residence every morning and travel to the Jovita's parking lot. From Jovita's, Martinez would walk over to meet Pardo at "the studio." "The studio" was a code word used by the Pardo DTO to refer to a part of Amado and Amanda Pardo's residence located at 404 W. Milton Street, Austin, Travis County, Texas. The studio is where Amado and Amanda Pardo stored and distributed heroin.

10. To get to the studio from the Jovita's parking lot, Martinez had to walk through a vacant lot located at 406 W. Milton Street, Austin, Travis County, Texas to get to the Pardos' residence at 404 W. Milton Street. The vacant lot at 406 W. Milton Street was also owned by Amado and Amanda Pardo. Martinez would then meet with Amado or Amanda Pardo to obtain more heroin and to deliver the money collected from previous heroin sales. After Martinez conducted the illegal drug and/or drug proceeds transaction at 404 W. Milton Street, he would leave to go meet with his heroin distributors and customers. Surveillance officers noted that Martinez commonly returned to the Jovita's parking lot, walked through the vacant lot at 406 W. Milton Street, and walked into the 404 W. Milton Street residence once or twice each day.

11. The process for making, possessing, and distributing heroin from the Respondent Properties (*i.e.* 404 W. Milton Street, 406 W. Milton Street, 1615 S. 1st Street and 1619 S. 1st Street, Austin, Travis County, Texas) was determined from the examination of hundreds of recorded telephone conversations, physical evidence retrieved by law enforcement officers, reports concerning electronic and physical surveillance, as well as discussions with investigators from other federal, state, and local agencies over the course of the investigation beginning in May 2011 until June 2012 (*i.e.* the time of the federal indictment of fifteen members of the Pardo DTO).

**B. 404 W. Milton Street and 406 W. Milton Street.**

12. During the investigation, surveillance officers determined that the vacant lot (*i.e.* 406 W. Milton Street) contained a storage shed where Pardo DTO member Freddie Alvarez ("Alavarez") lived although there was no plumbing. Wire intercepts revealed that Alvarez sold heroin in coordination with Amado Pardo from that storage shed.

13. On most mornings, while conducting surveillance on 406 W. Milton Street, investigators witnessed Alvarez conducting heroin transactions with distributors for the Pardo DTO that were later identified as Terry Ayers, Lucy Estrada, David Sosa, and Kilpatrick Williams. Investigators also witnessed these Pardo DTO members commonly purchasing additional heroin from Alvarez throughout the day.

14. Through surveillance, wire intercepts, and debriefing human sources; FBI agents discovered how Amado Pardo and Freddie Alvarez would coordinate the heroin sales. At the start of the day, Alvarez would obtain a supply of heroin from Amado Pardo at 404 W. Milton Street. Alvarez would then walk through 406 W. Milton Street (*i.e.* the vacant

lot) to the Jovita's parking lot (at 1615 and 1619 S. 1st Street) to meet his customers. Alvarez would then take the drug proceeds back to Amado Pardo.

15. Some examples that demonstrate the daily flow of supply, sales, and proceeds for heroin are as follows:

a. When Alvarez needed more heroin to meet the demand of the distributors and customers, he would call Amado Pardo and state, "Bicycle Man [aka Terry Ayers] called and said he is on his way.... I need some." In turn, Amado Pardo would call Amanda Pardo and tell her, "I need you to put one for Freddie in the trash," meaning that Amanda was to place an 18-balloon pack of heroin in a hidden location at their residence on 404 W. Milton Street.

b. On March 9, 2012, Amado Pardo called Amanda Pardo and asked if she had "an 18?" Amanda Pardo replied affirmatively and further stated that she had not "hidden the rest" and that it was "there at the house in the room where I sleep, in a small blue box where the pillows are." Based on this intercepted conversation, officers determined that Amado and Amanda Pardo were discussing the availability of an 18-pack of heroin and that Amanda Pardo was explaining where the heroin was located inside the house at 404 W. Milton Street.

c. On March 13, 2012, Amanda Pardo told Amado Pardo, "We are almost done cutting it up, and Tatiana is here." Based on this intercepted conversation, officers determined that Amanda Pardo was informing Amado Pardo that she and Huang were at 404 W. Milton Street processing the heroin and getting it ready for distribution.

d. On April 3, 2012, Huang used Amado Pardo's phone to speak with Amanda Pardo. Huang reported, "I'm here." Amanda Pardo responded, "Okay. Get everything ready. We are going to work upstairs. I'll be there in a minute...." Huang asked, "And the balloons?" Amanda Pardo replied, "They're on my bed." Based on this intercepted conversation, officers determined that Huang was at 404 W. Milton Street ready to process heroin and the balloons used for packaging the heroin were on Amanda Pardo's bed.

e. On April 24, 2012, Amado Pardo asked Amanda Pardo in an intercepted call, "Where is the money at to get these guys off my back?" Amanda Pardo replied, "It's in your drawer. The bag with flowers. All the money you gave me all day is in there." During the investigation and as illustrated by this wire intercept, officers concluded that Amanda Pardo handled the money from Amado Pardo's heroin sales and kept it in their house at 404 W. Milton Street.

C. **Jovita's at 1615 S. 1st Street and 1619 S. 1st Street.**

16. Jovita's is a commercial property located on the east side of S. 1st Street and is a stone masonry building marked with a large "Jovita's" sign. The parking lot is located in the rear and is adjacent to a creek running between the Jovita's properties and the 406 W. Milton Street lot occupied by Freddie Alvarez.

17. Whether Amado Pardo sold heroin directly to a customer or to a primary distributor, like Freddie Alvarez or Michael Martinez, the customers or distributors would sometimes park at Jovita's and walk to Amado's residence at 404 W. Milton Street. A review of Texas Workforce Commission records and intercepted telephone calls indicated that Amado Pardo had employed Amanda Pardo, Freddie Alvarez, and Tatiana Huang at Jovita's. Further, on occasion, Amado Pardo conducted drug meetings at Jovita's. Thus, investigators believed that Jovita's was a "front" to conceal Amado Pardo's heroin trafficking. In February 2013 at the trial of two co-conspirators (see Paragraph 21, below), both Tatiana Huang and Chris Mier testified that they processed heroin at Jovita's, thus, confirming the investigators' belief.

18. Freddie Alvarez was one of the heroin sellers for Amado Pardo who worked at Jovita's. On March 12, 2012, Pardo DTO member David Sosa called Alvarez and said, "Hey bring me one." Alvarez answered, "I have to call the boss man and close the restaurant and everything because I'm the only one here at the restaurant. You'll have to give me 5-10 minutes or more. I don't know if the boss man has any ready." Based on this intercepted conversation, investigators determined that David Sosa was ordering an 18-balloon pack of heroin and that Alvarez needed to check with Amado Pardo to see if Pardo had any heroin ready.

19. After reviewing records related to Jovita's, the investigators determined that Jovita's daily average sales for a 30-day month were $570 per day. In comparison, the restaurant next door to Jovita's had daily average sales for a 30-day month of $4,558.18 per day. Investigators questioned how Amado Pardo was able to keep the restaurant open without the income to afford the salaries/wages, food, utilities, restaurant supplies, and other items needed to run a restaurant. Thus, investigators believed that Amado Pardo was using drug proceeds from the activities of the Pardo DTO to overcome Jovita's financial deficits to continue operating the restaurant.

**D. Guilty Pleas and Verdicts in the Criminal Case.**

20. On June 19, 2012, a federal grand jury returned an indictment against Amado Pardo and Amanda Pardo along with thirteen other defendants, charging them with illegally conspiring to possess with intent to distribute heroin in violation of 21 U.S.C. § 846. *See United States v. Amado Pardo et al.*, No. A-12-CR-234-SS (W.D. Tex. filed June 19, 2012).

21. Fourteen of the fifteen defendants are currently awaiting sentencing. Two of the defendants (*i.e.* Jorge Carrillo and Jose Pardo) were found guilty by a jury in February 2013. *See id.* at Clerk's Doc. # 523. Twelve of the defendants have pleaded guilty to the criminal charge, including Amanda Pardo. *See id.* at Clerk's Doc. #470, 472. Amado Pardo died on January 23, 2013, after pleading not guilty.

22. Based on the foregoing, the Respondent Real Properties are subject to forfeiture pursuant 21 U.S.C. § 881(a)(7) because they constitute properties which were used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of the possession of, with the intent to distribute, illegal controlled substances (*i.e.* heroin) in knowing violation of 21 U.S.C. §§ 801 *et seq.*

## V. PRAYER

WHEREFORE, PREMISES CONSIDERED, Petitioner United States prays that due process issue to effect the forfeiture of the Respondent Real Properties, that due notice, pursuant to Supplemental Rule G(4), be given to all interested parties to appear and show cause why forfeiture should not be decreed[1], that a warrant for an arrest *in rem* be ordered, that the Respondent Real Properties be forfeited to the United States, that the Respondent Real Properties be disposed of in accordance with the law, and for any such further relief as this Honorable Court deems just and proper.

Respectfully submitted,

ROBERT PITMAN
UNITED STATES ATTORNEY

By: [signature]

DANIEL M. CASTILLO
Assistant United States Attorney
Texas State Bar No. 00793481
816 Congress Avenue, Suite 1000
Austin, Texas 78701
512-916-5858/512-916-5854 (fax)

ATTORNEYS FOR PETITIONER,
UNITED STATES OF AMERICA

[1] Appendix A, which is being filed along with this complaint, will be sent to those known to the United States to have an interest in the Respondent Real Properties.

**VERIFICATION**

Special Agent Steve Hause declares and says that:

1. I am a Special Agent with the Federal Bureau of Investigation, am assigned to the Austin Division Office, and am the investigator responsible for the accuracy of the information provided in this litigation.

2. I have read the above Verified Complaint for Forfeiture and know the contents thereof; the information contained in the Verified Complaint for Forfeiture has been furnished by official government sources; and based upon information and belief, the allegations contained in the Verified Complaint for Forfeiture are true.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 8 day of March, 2013.

Steve Hause, Special Agent
Federal Bureau of Investigation
Austin Division Office