IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
2014 NOV -7  AM 9:07
CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
           DEPUTY

UNITED STATES OF AMERICA,
                     Petitioner,

-vs-                                                                                             Case No. A-13-CA-194-SS

REAL PROPERTY LOCATED AND SITUATED AT 404 W. MILTON STREET, AUSTIN, TRAVIS COUNTY, TEXAS; REAL PROPERTY LOCATED AND SITUATED AT 406 W. MILTON STREET, AUSTIN, TRAVIS COUNTY, TEXAS; REAL PROPERTY LOCATED AND SITUATED AT 1615 S. 1ST STREET, AUSTIN, TRAVIS COUNTY, TEXAS; and REAL PROPERTY LOCATED AND SITUATED AT 1619 S. 1ST STREET, AUSTIN, TRAVIS COUNTY, TEXAS,
                     Respondents.

## ORDER

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically the United States' Motions for Summary Judgment as to 404 W. Milton [#94], 406 W. Milton [#91], 1615 S. 1st Street [#92], and 1619 S. 1st Street [#93]; Respondents' [#96] and Claimants' [#100] Responses thereto, the United States' Reply [#98] thereto, and Claimants' Sur-Reply [#105][1] thereto; Claimants' Motions for Final Summary Judgment [#97] and for Summary Judgment for Respondent Properties [#99], the United States' Response [#109] thereto, and the Claimants' Replies [#110, 111] thereto; Supplements #1 and #2 to Claimants' Response to

---

[1] Claimants did not request leave to file their Sur-Reply as required by Local Rule CV-7(f)(1). Nevertheless, the Court has considered Claimants' improper Sur-Reply in ruling on the instant motions.

Petitioners' Motion for Summary Judgment and to Claimants' Motion for Summary Judgment [#102, 103]; Claimants' Submission of Evidence Regarding Claimants' Knowledge of Illegal Activities [#114]; the United States' Advisory to the Court [#115]; and the United States' Motion for Default Judgment of Forfeiture as to Amanda Pardo [#95]. Having considered the documents, the governing law, the arguments of the parties during hearing before the Court, and the file as a whole, the Court now enters the following opinion and orders.

## Background

On June 19, 2012, a grand jury indicted Amado Pardo (Amado), his wife Amanda Pardo, and thirteen other persons for Conspiracy to Possess with Intent to Distribute and Distribution of a Controlled Substance, heroin, in violation of 21 U.S.C. § 846. During the investigation which led to the indictment, authorities discovered heroin distribution activity centered around the four properties at issue in this action: 404 W. Milton, 406 W. Milton, 1615 S. 1st Street, and 1619 S. 1st Street (the Properties). The Properties, which abut one another and are joined by a rock walkway, together formed Amado Pardo's "compound," which consisted of the Pardo family residence (404), where Claimant MP, Amado's minor child, currently resides; a vacant lot adjacent to the residence (406); and the two South First Street properties, better known to the citizens of Austin, Texas as the situs of once-iconic, now-defunct Jovita's Restaurant, a Mexican eatery and music venue run by the Pardos prior to their arrests.

At the time of the indictment, the United States instituted criminal forfeiture proceedings against Amado and Amanda Pardo's interest in the Properties pursuant to its statutory authority

under 21 U.S.C. § 881(a)(7) of the Controlled Substances Act,[2] *see* Verified Compl. [#1] at ¶ 2, and on June 21, 2012, filed and recorded with the Travis County Clerk notices of *lis pendens* for each of the Properties. Amanda Pardo acknowledged she forfeited her interest in the Properties at sentencing following her guilty plea. *See* Amanda Pardo Sentencing Tr. [#90-2] at 64:23–24. However, as abatement of the criminal proceedings against Amado, discussed below, included abatement of the criminal forfeiture proceedings against his interest, on March 8, 2013, the United States filed this civil forfeiture action against the Properties. On May 6, 2013, notices of *lis pendens* were again filed and recorded with the Travis County Clerk. *See* Jan. 7, 2014 Order [#70] at 3.

Of the fifteen persons named in the criminal indictment, twelve pled guilty. Of the three who went to trial, only two escaped conviction, and both by death: the charges against Jose Pardo were dismissed after he died during pendency of his appeal from a guilty verdict, and, as is relevant to the instant motions for summary judgment, on January 23, 2013, Amado Pardo died prior to trial. Amado's counsel thereafter moved the Court to dismiss *ab initio* the indictment and proceedings against him, *see* Mot. Dismiss & Abate *Ab Initio* [#510] at 1, *United States v. Pardo et al.*, No. 1:12-CR-00234-SS-1, and this Court did so on March 6, 2013. Mar. 6, 2013 Order [#526], *id.*

Prior to his death, however, Amado executed a will devising all of his interest in the Properties to his adult children, Claimants Jovita Pardo, Sandra Guzman, and Ismael Guzman, and

---

[2] Section 881(a)(7) provides:

(a) Subject property
The following shall be subject to forfeiture to the United States and no property right shall exist in them:

> (7) All real property, including any right, title, and interest (including any leasehold interest) in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this subchapter punishable by more than one year's imprisonment.

to his minor child, Claimant MP, by way of a testamentary trust. That will was admitted to probate, and the United States did not intervene in the probate proceedings to assert its intent to file a civil forfeiture action. Claimants contend because the criminal forfeiture proceedings against Amado were abated *ab initio*, and because the United States failed to give notice of its intent to seek forfeiture of the Properties while Amado's will was being probated, they (the Claimants) had no reason to believe the United States would seek a civil forfeiture against the Properties, are "innocent owners" within the meaning of CAFRA, and are entitled to possession of the Properties free and clear.[3] Unsurprisingly, the United States disagrees, and argues the Properties are subject to forfeiture.

## Analysis

### I.     Cross-Motions for Summary Judgment

#### A.     Legal Standard

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

---

[3] Claimants Ismael Guzman, MP, Sandra Guzman, Jovita Pardo, Estate of Amado Pardo, and Guzman-Pardo Family Trust #2 have submitted claims as to the Properties. Claimant Mayo Jovita's, Inc. initially submitted a claim as to 1615 S. 1st Street, *see* Verified Claim Ownership [#44], but abandoned that claim during a hearing before the Court on June 26, 2014. *See* Tr. Mot. Hr'g 6/26/2014 [#90-2] at 3:7, 3:22–4:7. ("[W]e are no longer pursuing a claim on behalf of Mayo Jovita's, Inc."). Two additional Claimants have submitted claims against 404 W. Milton: Travis County, Texas, which claims unpaid *ad velorem* taxes, and Beneficial I Inc., which claims for unpaid mortgage loan transaction interest. Neither join in the Pardo-related Claimants' motions for summary judgment.

(1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id*. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.* "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element

essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

**B.      CAFRA**

Civil forfeiture proceedings are governed by the Civil Asset Forfeiture Reform Act of 2000 (CAFRA), Pub. L. No. 106-185, 114 Stat. 202. To be entitled to forfeiture under CAFRA, the United States must establish, by a preponderance of the evidence, that the property in question is subject to forfeiture. 18 U.S.C. § 983(c)(1). Where, as here, the government's theory of forfeiture is the property was used to commit or facilitate the commission of a criminal offense, it bears the burden to establish a "substantial connection" between the property and the offense in question. *Id.* at § 983(c)(3). In carrying its burden, the United States is not permitted to rely on hearsay or other inadmissible evidence. *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 510 (5th Cir. 2008).

If the government establishes the requisite substantial connection between the property and the criminal offense, the claimant then has the opportunity to show, by a preponderance of the evidence, he or she is an "innocent owner." *Id.* at 509 (citing 18 U.S.C. § 983(d)(1)). An innocent owner's interest in property is not forfeited under CAFRA. *United States v. $109,980.00, More or Less, in U.S. Currency*, 546 F. Supp. 2d 425, 430 (W.D. Tex. 2008). Where the claimant acquired her interest in the property after the conduct that subjected the property to forfeiture took place, in order to prove up the "innocent owner" defense, the claimant must show she (1) "was a bona fide purchaser or seller for value" and (2) "did not know and was reasonably without cause to believe that the property was subject to forfeiture." 18 U.S.C. § 983(d)(3)(A).

If the claimant is unable to satisfy the first prong of the innocent owner defense because she is not a bona fide purchaser or seller for value, she can still establish the defense if she falls within the "primary residence" exception. The primary residence exception requires the claimant to show (1) the property is her primary residence; (2) depriving her of the property would deprive her of the means to maintain reasonable shelter in the community; (3) the property is not the proceeds of any crime; and (4) she was the legal dependent of a person whose death resulted in the transfer of the property through inheritance or probate. *Id.* at § 983(d)(3)(B).

### C.  Application

Claimants argue the Properties are not subject to forfeiture for five reasons: first, because Claimants inherited clear title to the Properties when Amado died, as no civil forfeiture proceeding had been initiated against him, and his will, which left his interest in the Properties to Claimants via testamentary trust, was thereafter fully probated; second (and relatedly), because Claimants are innocent owners within the meaning of 18 U.S.C. § 983(d); third, specifically with respect to 404 W. Milton, because Claimant MP, a minor, satisfies the primary residence exception; fourth, specifically with respect to 1615 S. 1st Street, because the United States has failed to demonstrate there was a substantial connection between that property and the heroin distribution conspiracy; and finally, because forfeiture of the Properties would constitute an excessive fine in violation of the Eighth Amendment and amount to an unconstitutional taking in violation of the Fifth Amendment.

Additionally, Claimants raise several objections to the admissibility of evidence proffered by the United States in support of its forfeiture claims, which this Court addresses first.

1.  **Claimants' Evidentiary Objections**

Claimants raise three evidentiary objections: first, use of any evidence concerning Amado including "[a]ny references in [the United States' evidence] to testimony at [sic] the criminal case" is barred because the proceedings against Amado were abated, leaving him legally innocent; second, marital privilege bars introduction of any communications between Amado and Amanda Pardo; and third, Federal Bureau of Investigation Agent Stephen R. Hause's affidavit is inadmissible as it is comprised primarily of hearsay statements.[4]  Supp. #1 Claimants' Resp. Pet'r's Mot. Summ. J. [#102] at 5. While Claimants' first two objections are overruled, their hearsay objection concerning Agent Hause's statement is sustained.

First, the Court agrees with the United States that while abatement resulted in dismissal of the indictment and vacation of the criminal proceedings against Amado, abatement does not preclude use of the fact evidence concerning Amado's actions in this proceeding. Abatement *ab initio* left Amado as if he had never been indicted, not as if he had never lived. *See United States v. Bennett*, 765 F.3d 887, 893–94, 896 (8th Cir. 2014) (noting co-conspirator's death while appeal was pending resulted in abatement *ab initio* and continuing to cite evidence concerning deceased co-conspirator in considering living co-conspirator's claims).

Second, the marital privilege does not apply to communications between Amado and Amanda Pardo concerning the heroin conspiracy, as conversations between spouses "about a joint criminal activity . . . [are] not protected by the confidential marital privilege." *United States v.*

---

[4] To the extent Claimants raise an additional hearsay objection to the admissibility of statements made by Amado, it is overruled, as statements of unindicted co-conspirators made during and in furtherance of the conspiracy are nonhearsay. FED. R. EVID. 801(d)(2)(E); *see, e.g., United States v. Goodman*, 605 F.2d 870, 877, 878–79 (5th Cir. 1979) (holding admission of testimony of unindicted co-conspirator was proper under Federal Rule of Evidence 801).

*Miller*, 588 F.3d 897, 905 (5th Cir. 2009) (citing *United States v. Ramirez*, 145 F.3d 345, 355–56 (5th Cir. 1998)). Nor does the abatement of Amado's proceedings change that conclusion, since the fact one spouse "was not charged with any crime does not preclude a finding that there was joint criminal activity." *Id.* (citing *Ramirez*, 145 F.3d at 355).

Concerning Agent Hause's affidavit, Claimants argue it cannot be considered on summary judgment as it contains hearsay and it is not clear what information in the affidavit is based upon Hause's personal knowledge. Claimants point to the Fifth Circuit's decision in *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504 (5th Cir. 2008), arguing hearsay evidence is no longer competent summary judgment evidence in civil forfeiture cases in this Circuit. Claimants are correct.

In *$92,203.00 in U.S. Currency*, a CAFRA civil forfeiture case, the Fifth Circuit reversed summary judgment for the government because the only evidence it submitted in establishing the grounds for forfeiture was a law enforcement agent's hearsay affidavit. *Id.* at 510. The claimant, Garcia, had been convicted by jury of one count of violating 31 U.S.C. § 5332, which makes it a crime to knowingly conceal more than $10,000.00 cash in order to evade federal currency reporting requirements, and sentenced to twenty-seven months in prison. *Id.* at 506. Garcia committed the crime by hiding $92,203.00 in cash in his car and attempting to drive to Mexico. *Id.* at 507.

The government thereafter brought a civil forfeiture action to recover the $92,203.00. *Id.* at 506. As the action was governed by CAFRA, the government was required to establish, by a preponderance of the evidence, the $92,203.00 was subject to forfeiture. *Id.* at 507. Attempting to do so, the government submitted an affidavit from an Immigration and Customs Enforcement agent which stated "the following information was either gathered in the course of my official duties or

I know this information of my own personal knowledge"; explained Texas Department of Public Safety officers pulled Garcia over on the highway and recounted what occurred thereafter; and noted Garcia's conviction for the crime in question. *Id.*

The Fifth Circuit found the ICE agent's affidavit was not based on personal knowledge and was comprised primarily of hearsay statements, as it was undisputed the agent was not present when Garcia was pulled over. *Id.* at 508. After noting the affidavit was therefore inadmissible on "normal" summary judgment procedures, the Fifth Circuit went on to explain the pre-CAFRA rule, which required the government to demonstrate only probable cause to seize the property in question, permitted reliance on hearsay evidence. *Id.* (internal citations omitted). The court reasoned the increase in the government's burden of proof under CAFRA from probable cause to a preponderance of the evidence (and other aspects of the statutory text) indicated hearsay evidence was no longer competent to establish grounds for forfeiture in civil forfeiture proceedings. *Id.* at 508–09. Accordingly, the court found the district court erred in considering the ICE agent's affidavit, and as the government offered no other admissible evidence in support of its claim to the property, reversed and remanded. *Id.* at 510.

As with the ICE agent's affidavit in *$92,203.00 in U.S. Currency*, Agent Hause's affidavit perfunctorily states it is based upon personal knowledge of the facts described therein. *See, e.g.*, Hause Decl. [#90-1] at 4 ¶¶ 5 ("During the course of the criminal investigation, *I learned* . . ."), 6 n.2 ("[T]his Declaration does not provide the full extent of *my knowledge* of the investigation . . ."), 16 ("During the criminal investigation, it became apparent *to me* that the Pardo-controlled real properties were being used . . . to receive, process, conceal, and distribute the heroin . . ."). The Court agrees with Claimants, however, that it is not clear which assertions in the affidavit are based

upon Agent Hause's personal observations and which are based upon things Agent Hause learned from other FBI agents or from Texas Department of Public Safety, Texas Department of Criminal Justice, Travis County Sheriff's Office, and Austin Police Department officers, all of whom collaborated with the FBI during the investigation. *Id.* at ¶ 3. As such, the affidavit raises the specter of hearsay, and is not admissible to prove the factual basis for forfeiture of the Properties.

The United States argues it is undisputed Agent Hause was the lead investigator on the Pardo case and points to other evidence in the record, including "trial testimony of conspirators, law enforcement agents, deposition testimony of Claimants and their counsel, and documents obtained in the criminal investigation (or in civil discovery) into this drug trafficking organization." United States' Resp. [#109] at 12. But Agent Hause's status as lead investigator does not mean he is unable to make hearsay statements, and the trial testimony from the criminal case is itself hearsay when offered for its truth absent a showing the declarants therein are unavailable to testify. *See* FED. R. EVID. 804(b)(1) (former testimony is not excluded as hearsay *if the declarant is unavailable as a witness*).

The Court has reviewed the evidence to which the United States points on the issue of substantial connection in each of its four motions for summary judgment. All of the material allegations map onto either Agent Hause's declaration or transcripts from the criminal trial,[5] both of which, as explained above, are hearsay. Accordingly, the United States has failed to carry its burden to show, by a preponderance of the evidence admissible under the Federal Rules of Evidence,

---

[5] Claimants' depositions are cited in a few places, but for points which do not establish a substantial connection between the Properties and the criminal activity in question. *See, e.g.,* United States' Mot. Summ. J. as to 406 W. Milton [#91] at 5 (citing "App'x at ¶¶ 63, 66–67, 69" which paragraphs cite Agent Hause's affidavit and the trial transcripts for facts specifically concerning drug activity and cite the depositions of Jovita Pardo, MP, and Ismael Guzman for the proposition Freddie Alvarez lived in a tent on 406 W. Milton).

that the Properties are substantially connected to the heroin distribution conspiracy, and its motions for summary judgment must, to that extent, be denied. However, in order to narrow the issues for trial, the Court will assume without deciding, for present purposes only, the Properties are substantially connected to the heroin distribution conspiracy. The Court will therefore consider the merits of Claimants' defenses unrelated to substantial connection—the innocent owner defense, the primary residence defense with respect to MP, and two constitutional defenses—and, as set forth below, rejects them all.

**2.    Innocent Owner Defense**

As previously noted, 18 U.S.C. § 983(d)(1) provides "an innocent owner's interest in property shall not be forfeited under any civil forfeiture statute." 18 U.S.C. § 983(d)(1). It appears[6] Claimants' first argument is this Court should disregard the two definitions of "innocent owner" provided in §§ 983(d)(2)–(3) and grant summary judgment to Claimants based solely on their argument Amado died innocent, given the abatement of the criminal proceedings against him. That argument is rejected for two reasons.

First, to the extent Claimants' argument is grounded in the claim Amado's estate is innocent and thus the property must also be innocent, Claimants misapprehend the nature of a civil forfeiture

---

[6] Claimants' arguments are rather disjointed, as Claimants' counsel seem to have miscommunicated regarding who was responsible for what, and as a result, there are before the Court two summary judgment motions, two Replies to same, and two Responses to the United States' summary judgment motions which raise somewhat different arguments but are brought on behalf of most of the same Claimants. Attorney Joseph Florio represents to the Court the duplicative filings "confuse[] and distortingly conflate[]" his arguments, and states he "is the sole Lead Counsel and attorney-of-record for all Claimants, from whom no permission was requested by or given to any other attorney to either compose or file any summary judgment related document[.]" Claimants' Reply to United States' Resp. [#110] at 1–2. Attorney Olivia Ruiz, however, states she "is Lead Counsel for Mayo Jovita's Incorporated and Co-Counsel for the remaining Claimants," represents she and Mr. Florio conferred regarding her intent to file the quasi-duplicative documents, and notes Mayo Jovita's would have been permitted to file its own summary judgment materials. Claimants' Reply to Pet'r's Resp. [#111] at 1–2. As the Court disagrees with both attorneys' legal arguments, this squabble is immaterial to the ultimate outcome.

proceeding. Under civil forfeiture, "it is the property that is 'held guilty and condemned as though it were conscious instead of inanimate and insentient.'" *United States v. $399,101.96 More or Less, in U.S. Currency*, No. SA-11-CV-731-XR, 2013 WL 3994632, at *4 (W.D. Tex. Aug. 1, 2013) (slip op.) (quoting *United States v. Ursery*, 518 U.S. 267, 275 (1996)). Since the action is not against a person, "it does not matter if the wrongdoer whose conduct forms the predicate for the forfeiture action was ever charged, convicted, or even acquitted of the misconduct." *Id.* (citing *Ursery*, 518 U.S. at 275; *United States v. 1700 Duncanville Rd.*, 90 F. Supp. 2d 737, 740 (N.D. Tex. 2000), *aff'd*, 250 F.3d 738 (5th Cir. 2001)). Even had Amado stood trial and been acquitted, his acquittal would not have meant the Properties were no longer subject to forfeiture.

Similarly, the contention Amado's estate is innocent because Amado died legally innocent is incorrect; in laying claim to the Properties, the estate stands in Amado's shoes, and the question therefore becomes whether Amado could raise an innocent owner defense were he alive. *United States v. One Parcel of Real Prop. & Improvements, Located at 1100 Peeler Ave., Lakeland, Lanier Cnty., Ga.*, 2007 WL 4289692, at *5 (M.D. Ga. Dec. 3, 2007) (citing *United States v. Unit Number 1105, 800 Claughton Island Dr., Miami, Fla.*, No. 00-2827-CV, 2002 WL 33001403, at *3 n.7 (S.D. Fla. Jan. 25, 2002)). As Amado is the person alleged to have led the heroin distribution conspiracy, he could not do so, and neither may his estate. *See id.* (decedent would be unable to assert an innocent owner defense if alive because "he is the individual who is alleged to have sold drugs to finance the construction of the dwelling on the Defendant Property").

Second, to the extent Claimants argue § 983(d)(1) stands completely divorced from the two definitions of "innocent owner" which follow, the Court finds (and Claimants have illuminated) no support in the law for that interpretation. *See, e.g.*, *$399,101.96 More or Less*, 2013 WL 3994632

at *5 (discussing the two possible definitions of "innocent owner" and concluding § 983(d)(3)(A) applied to the claimant). The statute sets forth differing definitions of "innocent owner" which must be met by persons claiming entitlement to the defense, and the key inquiry in determining which definition applies is the time at which the claimant's interest in the property was acquired. *See* 18 U.S.C. §§ 983(d)(2)(A), (3)(A) (distinguishing between interests in existence at the time the conduct subjecting the property to forfeiture took place and interests acquired after such conduct occurred).

Here, the illegal activity in question took place between May 2011 and June 2012. *See* Indictment [#90-3] at 61, 62 (charging defendants with conspiracy "[b]eginning on or about May 1, 2011, and continuing through at least June 15, 2012"). Claimants' interest in the Properties did not vest until Amado's death on January 23, 2013, well after the commission of the illegal acts giving rise to this forfeiture action. Accordingly, in order to successfully defend against forfeiture of their interests, Claimants must show "at the time [they] acquired the interest in the property," they were (1) "bona fide purchaser[s] or seller[s] for value," and (2) "did not know and w[ere] reasonably without cause to believe that the property was subject to forfeiture." 18 U.S.C. § 983(d)(3)(A)(i)–(ii).

Having taken by inheritance, Claimants are manifestly not "bona fide purchasers or sellers for value": they are gratuitous transferees. The innocent owner defense thus fails outright as to all Claimants in connection with the Properties—with the sole potential exception of MP, whom Claimants contend can satisfy the primary residence exception.

a. **Primary Residence Exception**

As 404 W. Milton is MP's primary residence, Claimants argue the § 983(d)(3)(B) primary residence exception,[7] which, when applicable, prevents "an otherwise valid claim" under § 983(d)(3)(A) from being denied on grounds the claimant gave no value in exchange for the property, applies here to save 404 W. Milton from forfeiture. But even could MP successfully establish the exception applies, MP would still be required to show he "did not know and [was] reasonably without cause to believe" the property was subject to forfeiture. *See id.* at § 983(d)(3)(A). This MP cannot do.

The government's initial *lis pendens* on the property (which remains on file in the Travis County real property records) was filed on July 12, 2012 and placed all persons, including MP, on notice 404 W. Milton was subject to forfeiture and that "any and all right, title, and interest in the . . . property . . . vest[ed] in the United States of America at the time of the commission of the unlawful acts giving rise to forfeiture." Notice *Lis Pendens* [#98-1] at 2; *United States v. 392*

---

[7] Again, § 983(d)(3)(B) provides:

An otherwise valid claim under subparagraph (A) shall not be denied on the ground that the claimant gave nothing of value in exchange for the property if—

    (i)    the property is the primary residence of the claimant;

    (ii)    depriving the claimant of the property would deprive the claimant of the means to maintain reasonable shelter in the community for the claimant and all dependents residing with the claimant;

    (iii)    the property is not, and is not traceable to, the proceeds of any criminal offense; and

    (iv)    the claimant . . . was the . . . legal dependent of a person whose death resulted in the transfer of the property to the claimant through inheritance or probate[.]

18 U.S.C. § 983(d)(3)(B). Here, the United States concedes MP meets the first and third criteria with respect to 404 W. Milton, as it is MP's primary residence and is neither the proceeds of nor traceable to the proceeds of an offense. United States' Mot. Summ. J. 404 W. Milton [#94] at 10.

*Lexington Parkway S., St. Paul., Minn., Ramsey Cnty.*, 386 F. Supp. 2d 1062, 1068 (D. Minn. 2005) (explaining claimants would not qualify as innocent owners if they acquired their ownership interests in the property after a *lis pendens* was filed, as a *lis pendens* would give them cause to know the property was subject to forfeiture). Claimants object the July 2012 *lis pendens* was associated with the *criminal* forfeiture proceedings, and contend while MP may have had notice of same, he had no notice or cause to believe *civil* forfeiture proceedings were forthcoming, as the United States failed either to intervene in the state probate proceedings or to file a civil forfeiture action when criminal proceedings were originally instituted. Even if true, however, those points are not material to the ultimate question whether MP is an innocent owner.

Claimants' argument is similar to one rejected by the Central District of California in *United States v. An Interest in the Real Property Located at 2101 Lincoln Boulevard, Los Angeles, California*, 729 F. Supp. 2d 1150 (C.D. Cal. 2010). The *2101 Lincoln Boulevard* claimants argued in order for the innocent owner defense to fail, the claimants must "know that, under the law, [criminal] activity allows the Government to forfeit property connected to the activity. In short, . . . unless they have knowledge of the forfeiture laws, they are innocent owners." *Id.* at 1151–52. Like the claimants' argument in *2101 Lincoln Boulevard*, Claimants' argument here turns upon technical knowledge of the government's ability to bring forfeiture proceedings: Claimants contend because they did not *know* civil forfeiture proceedings would be instituted following abatement of the criminal ones, they did not know and were reasonably without cause to believe the Properties were subject to forfeiture. *See* 18 U.S.C. § 983(d)(3)(A)(ii).

The salient point, however, is not Claimants' technical awareness of the pendency of criminal versus civil forfeiture proceedings; instead, it is "knowledge that the property the claimant is about

to acquire is *traceable to or was involved in criminal activity.*" *2101 Lincoln Blvd.*, 729 F. Supp. 2d. at 1154 (emphasis in original). This Court asked the parties during hearing on the instant motions to provide any citation indicating the United States was required to intervene in the probate proceedings in order to preserve its civil forfeiture claim against the properties; none was forthcoming. In light of all of the above, and given the criminal indictment of fifteen participants in the heroin distribution conspiracy, the original notice of *lis pendens* filed against 404 W. Milton, the media coverage of this case, and MP's admission he was aware the government was seeking forfeiture of the property in connection with the drug charges as of approximately July 2012, *see* MP Dep. [#90-1], at 70, 28:8–29:14, the Court finds MP, like the other Claimants, had knowledge the property he was about to acquire was involved in criminal activity, and is therefore unable to satisfy the elements of the innocent owner defense.

### 3.     Constitutional Violations

Finally, Claimants contend forfeiture of the Properties violates the Excessive Fines Clause of the Eighth Amendment and the Takings Clause of the Fifth Amendment because, at the time Amado died, he had neither been tried nor found guilty of conducting any heroin-related activity on any of the Properties and that "innocence is imputed to his interest in his properties[.]" Thus, Claimants assert, seizure of the Properties would be "grossly disproportional to the gravity of [Amado's] offense"[8] because he was never convicted of anything. Claimants['] Mot. Summ. J. Resp't Properties [#99] at 12–13. Alternatively, Claimants contend forfeiture is unconstitutional as

---

[8] Claimants pull this language from *United States v. Bajakajian*, 524 U.S. 321 (1998), where the Supreme Court held the forfeiture of currency a person has wilfully failed to report he is transporting outside the United States, as required by federal law, is "punishment for an offense" and therefore subject to an Excessive Fines Clause analysis. *Id.* at 328.

the Properties have a fair market value of approximately $3.2 million, and "assuming the most ideal conditions of uninterrupted heroin production for a full 52 weeks, the most heroin that could have been produced would have a total value of no more than $970,320.00[,]" meaning the government is "exceeding the $1,000,000 fine by at least $2.2 million dollars." *Id.* at 13.

The notion Amado's legal innocence is imputed to the Properties has already been discussed and discarded by this Court[9] and will not be further engaged. Nor are Claimants correct the maximum fine applicable to conspiracy to possess and to possess with intent to distribute heroin is $1,000,000; as the United States points out, the maximum fine is $10,000,000. *See* 21 U.S.C. § 841(a)(1), (b)(1)(A) (stating maximum fine in the case of an individual convicted of distributing or possessing with intent to distribute 1 kilogram or more of heroin is $10,000,000). Taking Claimants' valuation of the Properties as true, $3.2 million is well below the maximum fine applicable to the offense associated with the Properties. As Claimants have articulated no reason for this Court to conclude a fine far lower than the maximum would here be unconstitutional, the Court concludes forfeiture does not offend the Excessive Fines Clause. *See United States v. Wallace*, 389 F.3d 483, 486 (5th Cir. 2004) ("[I]f the value of the forfeited property is within the range of fines prescribed by Congress, a strong presumption arises that the forfeiture is constitutional."); *United States v. 2004 Ferrari 360 Modeno*, 544 F. App'x 545, 546 (5th Cir. Nov. 7, 2013) (mem. op.) (forfeiture did not violate Excessive Fines Clause where value of property forfeited did not exceed the maximum fine for the relevant offenses).

Finally, the Court can discern no argument from Claimants regarding the Takings Clause of the Fifth Amendment other than a bare recitation it has somehow been violated. Accordingly, the

---

[9] *See supra* section I.C.2.

Court rejects that argument outright. As the Court finds Claimants' innocent owner, primary residence exception, and constitutional defenses lack merit, the United States is entitled to summary judgment on those questions.

## II.     Motion for Default Judgment

The United States has also filed, "out of an abundance of caution," a motion for default judgment concerning Amanda Pardo's interest in the Properties, as a statement from Claimants' counsel suggesting Pardo may not have forfeited her interest in all the Properties during her criminal proceedings has given the government the jitters. The Court finds the motion should be granted.

The United States filed its Verified Complaint for Forfeiture [#1] in this action on March 8, 2013. Amanda Pardo and her attorneys Marjorie Bachman and David Sheppard were personally served with the Verified Complaint and Warrant for Arrest of Property concerning the Properties on May 16, 2013. Process Receipt & Return [#28] (Pardo); [#29] (Bachman); [#30] (Sheppard). Anyone claiming an ownership interest in the Properties who received direct notice of this forfeiture action, as did Pardo, Bachman, and Sheppard, was informed of the requirement he or she file a claim with the Court within 35 days after the date of personal service or be subject to default judgment. *See* Notice Compl. Forfeiture [#1-1] at ¶ 2 (citing FED. R. CIV. P. SUPP. R. G(4)(b)). Amanda Pardo never filed a verified claim or answer, and the time to do so has long since passed. Entry of default judgment against any and all interest in the Properties she did not forfeit in her own criminal proceedings is therefore appropriate.

## Conclusion

The United States has failed to submit admissible evidence in support of its contention the Properties were substantially connected to the heroin distribution conspiracy. Given the Fifth

Circuit's decision in *$92,203.00 in U.S. Currency*, absent competent nonhearsay evidence of a substantial connection between the Properties and the heroin distribution conspiracy, the Court is constrained to put the government to its proof. The Court has, however, streamlined the issues by rejecting Claimants' innocent owner, primary residence, and constitutional defenses, leaving substantial connection the sole issue to be proved up at trial.

Accordingly:

The United States' Motions for Summary Judgment as to 404 W. Milton [#94], 406 W. Milton [#91], 1615 S. 1st Street [#92], and 1619 S. 1st Street [#93] are GRANTED IN PART and DENIED IN PART as set forth in this opinion;

Claimants' Motion for Final Summary Judgment [#97] and Claimants['] Motion for Summary Judgment for Respondent Properties [#99] are DENIED; and

United States' Motion for Default Judgment of Forfeiture as to Amanda Pardo [#95] is GRANTED.

SIGNED this the 6th day of November 2014.

/s/ Sam Sparks
SAM SPARKS
UNITED STATES DISTRICT JUDGE